**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

THE UNIVERSITY OF TEXAS SYSTEM, and
THE UNIVERSITY OF HOUSTON SYSTEM,

     Plaintiffs,

v.

ALLIANTGROUP, LP, and WHRA MERGER
SUB II, INC. f/k/a WHR ARCHITECTS, INC.,

     Defendants.

FILED

18 JUL -2 PM 4: 12

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ A1_____
CLERK

**A18MC0551 RP**

MISCELLANEOUS ACTION

## DEFENDANT ALLIANTGROUP LP'S MOTION TO COMPEL
## NON-PARTY EFFICIENCY ENERGY, LLC

Pursuant to Fed. R. Civ. P. 45, Alliantgroup, LP ("Alliantgroup") requests that the Court

compel Efficiency Energy, LLC ("Efficiency Energy") to produce certain documents in response

to a subpoena duces tecum.

## INTRODUCTION

At issue in this Motion is a subpoena duces tecum that was served on Efficiency Energy

on May 17, 2018 (the "EE Subpoena") in Austin, Texas (Ex. A). The EE Subpoena was served

in connection with an action captioned as *The University of Texas System, et al. v. Alliantgroup,*

*LP, et al.*, Case No. 4:17-cv-02588, pending in the Southern District of Texas, Houston Division

(the "S.D. Texas Action"). While not a party to the S.D. Texas Action, Efficiency Energy and its

owner, William Volker, are central to that lawsuit. Volker is not only an important fact witness,

he was also designated as an expert by plaintiffs in the S.D. Texas Action and, as described

below, continues to play an active role in that dispute. His company, Efficiency Energy,

possesses documents that are critically important to Alliantgroup's defense in the S.D. Texas

Action.  Because Efficiency Energy refuses to produce those documents in response to the EE

Subpoena, Alliantgroup has been forced to seek relief from this Court.

The EE Subpoena contains 18 Requests for documents.  Efficiency Energy represents

that it is not in possession of materials responsive to 13 of those Requests.  Ex B.  In response to

the remaining five Requests (4, 5, 16, 17, and 18), Efficiency Energy asserts conclusory

discovery objections such as "undue burden" and "not relevant," and "privileged," without

identifying the specific information it believes to be privileged or producing a privilege log.  *Id.*

Efficiency Energy also asserts objections based on "trade secret and other confidential

commercial information," ignoring the fact that Alliantgroup provided Efficiency Energy with a

copy of a Protective Order entered by Judge Hittner, which expressly protects documents

produced by nonparties.  In complete reliance on these baseless objections, Efficiency Energy

produced no documents.  Efficiency Energy also failed to indicate whether, subject to its

objections, it is withholding responsive materials to Requests 4, 5, 16, 17, and 18.  This Motion

concerns those remaining five Requests.

Discovery in the S.D. Texas Action, which is set to close on July 2, 2018, with motions

set to be filed by August 15, 2018, discloses that Efficiency Energy is in possession of

documents and communication responsive to the five Requests.  Alliantgroup is entitled to this

information to defend itself, and now respectfully requests that this Court compel production.

## BACKGROUND

### I.    THE S.D. TEXAS ACTION

Alliantgroup is a Texas limited partnership based in Houston that provides clients with

federal and state tax consulting services, including services related to claiming tax credits and

deductions.  It is currently a defendant in the S.D. Texas Action.  *See* Ex. C (First Amended

Complaint).

The allegations in the S.D. Texas Action concern § 179D of Title 26, the Internal Revenue Code, which allows for a tax deduction for property owners who invest in energy-efficient construction. 26 U.S.C. § 179D(a). When a qualifying energy efficient property is owned by a government entity which is not subject to federal taxation—such as public university systems—§ 179D allows for the allocation of the deduction to "the person primarily responsible for designing the property in lieu of the owner of such property." *Id.* at § 179D(d)(4). Section 179D does not provide for the government property owner to receive remuneration from the designer relating to the tax deduction.

Nonetheless, the University of Texas System ("UTS") and University of Houston System ("UHS") sued Alliantgroup and WHRA Merger Sub II, Inc. ("WHR"), a designer and an Alliantgroup client, claiming entitlement to a portion of the § 179D deductions and asserting RICO, fraud, and other claims. UTS and UHS do not dispute that WHR performed work consistent with § 179D that would otherwise entitle WHR to allocation of § 179D deductions. They claim, however, that WHR should have paid some or all of its tax benefit to them, and contend that Alliantgroup somehow misled UTS and UHS into allocating the deductions to WHR. Alliantgroup and WHR filed motions to dismiss, which are pending.

## II.    WILLIAM VOLKER AND EFFICIENCY ENERGY

While not a named party (no Answer has been filed), William Volker is a central figure both as a fact witness and more recently as a purported expert. He and his company, Efficiency Energy, which is a competitor of Alliantgroup, are represented by the same counsel as UTS and UHS in the S.D. Texas Action. Volker, through his company, Efficiency Energy, purports to help governmental entities "monetize" the § 179D tax deduction, even though such entities cannot use the deduction due to their tax-exempt status. In practice, this means that Volker, after being engaged by a governmental entity, contacts designers entitled to a § 179D deduction and

attempts to negotiate—sometimes, as in this case, retroactively—for payment from the designer in exchange for the allocation of the § 179D deduction.  Volker apparently came up with this business plan during his academic coursework at Wake Forest University prior to graduating in 2006.  Ex. D, Volker Depo. at 9:21–9:25.

Volker performs this service for a contingent fee.  Ex. E, Volker Depo. at 135:5–135:16. If he is successful in extracting a payment from a design professional, he takes a percentage of the payment made to the governmental entity.  *Id.*  He has testified that he is personally and financially incentivized to extract the highest possible payment from design professionals.  *Id.* at 278:1–278:8.

Volker's work in connection with § 179D goes far beyond mere negotiations on behalf of governmental entities.  As discussed further below, Volker has sent letters and sought meetings with elected officials and government agencies that have expressed concern over the legality of demanding payments in exchange for allocation of § 179D deductions, and engaged a lobbyist to assist him.  He has contacted media outlets to press his agenda, consulted with UTS and UHS in an apparent effort to encourage legal action against Alliantgroup, and has otherwise been extensively involved in all aspects of the S.D. Texas Action in which he has an apparent financial interest.

### A. Volker's campaign against critics and competitors, including Alliantgroup

Volker has aggressively countered any perceived threats to his business.  Volker drafted and provided a letter to the U.S. House of Representatives Ways & Means Committee in response to Congressman Boustany's statements condemning payments to government entities in exchange for allocation of a § 179D deduction as a "kickback."  Ex. E at 62:18–63:14.  Volker sought meetings with, and sent materials to, other politicians and various federal agencies,

including the Government Services Administration, the Department of Defense, and the Housing and Urban Development Department. *Id.* at 45:7–46:13.

Volker has also used the media to try to advance his agenda. He has contacted media outlets across the country over the past several years to obtain press favorable for his position. *Id* at 63:15–69:19. For example, he communicated with a reporter at The New York Times ahead of a recently published article, entitled "Tax Break, or Kickback," that discusses the S.D. Texas Action. Ex. F.

Volker has also attacked Alliantgroup—his perceived competitor—at every turn and sought to undermine Alliantgroup's business. For example, in a March 2014 email with Plaintiff UTS, Volker criticized Alliantgroup and requested that UTS "direct [Alliantgroup] to me personally and please [forward] any correspondence to my attention if they contact the University directly." Ex. G. Shortly thereafter, Volker began contacting Alliantgroup's clients, which resulted in one client terminating its contract with Alliantgroup and forced Alliantgroup to file suit against Volker for tortious interference and injunctive relief. *See Alliantgroup, LP v. William Volker, et. al., LLC*, No. 2014-54532, Harris County District Court, 127th Judicial District. Volker has also used the Freedom of Information Act ("FOIA"), and state law equivalents, to obtain information concerning Alliantgroup and its clients from federal and state agencies.

### B. Volker's relationship with UTS and UHS and his extensive involvement in the S.D. Texas Action

Volker's involvement in the S.D. Texas Action has been extensive both before and after suit was filed. Volker testified that he reviewed all the correspondence from Alliantgroup regarding the § 179D allocation forms prior to the filing of that lawsuit. Ex. E, Volker Depo. at

242:2–243:9.  Volker then communicated his opinions and concerns to UTS and UHS and their counsel.  *Id.*, Ex. E.

Volker and Efficiency Energy have been a source of evidence that UTS and UHS have used in the S.D. Texas Action.  For example, in response to a prior subpoena, Volker produced documents to Alliantgroup shortly before certain depositions that were used by UTS and UHS's counsel as exhibits in those depositions.  *See* Ex. H. [1]

Volker and Efficiency Energy also appear to have provided documents to UTS and UHS that were obtained from government entities through FOIA requests.  One document that was used by their counsel as an exhibit in two depositions appears on its face to have been obtained from the State of Texas under the Public Information Act, and is partially redacted pursuant to an exception thereto.  Ex. I, at 11.

Notably, one of the few sources cited by UTS and UHS's experts, Lori Raineri, relating in any way to the legality of demanding payment in return for a § 179D allocation was drafted by Volker's former professor, Professor Jonathan Duchac, and published only days before Raineri's expert report was produced to Alliantgroup and WHR.  Ex. J at 7.  The final version of the article is entitled "The Constitutionality of Uncompensated Section 179D(d)(4) Allocations by State, Local and Municipal Government Building Owners" (the "Article").

Alliantgroup served a subpoena duces tecum on Professor Duchac for documents related to the designated experts, the Article, and Volker.  Discovery reveals that a draft of this Article

---

[1] While a cover letter indicates that it was Plaintiffs' production, the production labels are those of Efficiency Energy, following previous production numbers.  The production itself appears as it could only have come from Volker.  Volker also produced a legal memorandum from Kutak Rock LLP—a law firm that is listed as part of Volker's team on pitch materials to potential clients—to his company, Efficiency Energy, dated April 28, 2016, that discusses the implications of allocating a deduction under § 179D.  Ex. Q.  Sections of this memo are included verbatim in UTS and UHS's First Amended Complaint.  Compare Ex. Q, § III ("If a governmental entity is unable to receive . . . .") with First Amended Complaint (Ex. C) at ¶ 5.

was forwarded by Volker to Philip Aldridge, a Vice Chancellor for UTS, with an e-mail

introducing Professor Duchac.  Ex. K.  Volker also provided research and other input on drafts of

the Article, and forwarded to Professor Duchac copies of court filings related to § 179D,

including the Complaint in the S.D. Texas Action.  Ex. L  For example, ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ Ex. M.[2] ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████

Volker also introduced Professor Duchac to the author of The New York Times article,

Patti Cohen.  In an email dated November 9, 2017, Volker stated "Patti may be interested in

seeing and potentially reporting on your 179D research initiatives."  Ex. N.  Professor Duchac

then responded to both Volker and Patti, stating "Hello Patti.  A team of colleagues and I have

been developing a stream of research around the inconsistent application of Section 179D.  I

would be glad to discuss the topic with you in great detail, and provide you with a working draft

of our most recent effort," which he did four days later. *Id.* Text messages reveal, however, that

Professor Duchac was disappointed with the article, telling Volker that "Saw the article.  Not as

much bite as I had hope for from NYT.  She took some liberties regurgitating our paper without

reference …… [*sic*] and she demoted me."  Ex. O.

---

[2] This exhibit, along with the corresponding text that has been redacted, will be submitted under seal pursuant to a separate motion, as it has been designated as Confidential Attorney Eyes Only under the Protective Order entered in the S.D. Texas Action.

These text messages appear to also establish that there was some coordination between the pair related to the S.D. Texas Action, with Professor Duchac asking, "Excellent [*sic*] So we are cleared on UT detail?" and Volker responding, "Yes it will be public by 12/15." *Id.*

Alliantgroup served Efficiency Energy with the EE Subpoena to obtain discovery related to Volker's multiple roles, including as a purported expert of § 179D, an advisor to UTS and UHS regarding the allegations that underlie their Complaint, a source for discovery used selectively by UTS and UHS, and as an influencer of the narrative surrounding the S.D. Texas Action through his contacts in the media.

## III.   EVENTS LEADING UP TO THIS MOTION TO COMPEL

On May 17, 2018, Alliantgroup served the EE Subpoena on Efficiency Energy requesting documents and communications related to: (i) the experts and their reports; (ii) communications with Professor Duchac and his co-authors; (iii) the Article; (iv) requests made under FOIA or state equivalents; and (v) communications with the media related to § 179D.

On May 31, 2018, Efficiency Energy served responses and objections, indicating that it is not in possession of information responsive to the Requests related to the experts or their reports. Ex. B. However, it repeated boilerplate objections to Requests 4, 5, 16, 17, and 18, and in complete reliance thereon, evaded its discovery obligations by failing to indicate whether it was withholding responsive material, and ultimately by not producing a single document. Request 4 and 5 seek documents and communications related to the Article and its authors; Requests 16 and 17 seek the FOIA requests and the responses thereto; and Request 18 seeks documents and communications with the media related to Section 179D. *See.* Ex. A at 8-11.

Because Efficiency Energy responded with only objections and failed to provide any documents, Alliantgroup had a meet-and-confer call with Efficiency Energy's counsel (who is also counsel for Volker, UTS, and UHS) on June 25, 2018. During that meet-and-confer,

Alliantgroup's counsel advised that the responses were inadequate and the objections were baseless, and offered Efficiency Energy the opportunity to supplement its responses.  Counsel for Efficiency Energy declined this opportunity.  With no remaining alternative, counsel advised that Alliantgroup would be moving to compel.  As of the date of this Motion, Efficiency Energy has not supplemented its responses to Alliantgroup's subpoena duces tecum.

## ARGUMENT

### I.      EFFICIENCY ENERGY OBJECTIONS ARE BASELESS.

Efficiency Energy proffers no valid objection that would completely exempt it from its discovery obligations under Rule 45 to produce documents and communications responsive to Requests 4, 5, 16, 17, and 18.  Instead, Efficiency relies on bare repetitions of terms like "unduly burdensome," "vague," "not proportional," "not relevant," "attorney-client and work product privileges," and "trade secrets."  It also makes statements that are not at all responsive to what the Requests are seeking.  For example, in response to all five Requests at issue, Efficiency Energy asserts the Request would "impose an undue burden" because it "would require the disclosure of all EE's documents, regarding all of EE's clients, since EE began operations in 2007."  Ex. B.  None of these Requests are asking for such information regarding Efficiency Energy's clients.  All five Requests are narrowly tailored to obtain specific information relating to the Article and its authors, the FOIA requests and responses, and communications with the media.  It is clear that these documents exist.  Efficiency Energy should be compelled to produce them.

### A.  Requests 4, 5, 16, 17, and 18 seek relevant information.

The Requests are narrowly tailored to obtain information relevant to Alliantgroup's defense to UTS and UHS's claims.  Federal Rule of Civil Procedure 26(b)(1) provides, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case . . . ." To be "relevant" within the meaning of Rule 26(b)(1), "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Discovery to date establishes that starting seven years prior to the initiation of the S.D. Texas Action, UTS and UHS were receiving guidance from Volker relating to § 179D. Discovery also establishes that Volker provided them with the legal memorandum that underlies their Complaint, obtained documents from government agencies that their shared counsel then used in depositions, assisted in the generation of a key academic source that is relied on by UTS and UHS's expert in her report, and used the media to craft a public narrative surrounding the S.D. Texas Action.

Requests 4 and 5 seek to understand Volker's role in the Article, which discovery already establishes he was actively involved in drafting. *See* Ex. A. Alliantgroup has portions of these communications produced by Professor Duchac; it is entitled to Efficiency Energy's evidence of those communication, as well as communications between Volker and Professor Duchac's co-authors, Edward Douthett and Tripp Petzel. Requests 16 and 17 seek to obtain the FOIA requests and any responses received. Discovery shows that UTS and UHS, which share counsel with Volker and Efficiency Energy, are being fed information obtained by Efficiency Energy through FOIA requests. Ex. I. Alliantgroup is entitled to see the entirety of what UTS, UHS, Volker, and Efficiency Energy are using selectively. Request 18 seeks communications with media outlets related to § 179D, which Volker and Efficiency Energy have a history of using to attack Alliantgroup and to generate media attention for the S.D. Texas Action—a case that involves sensitive claims sounding in fraud and civil RICO.

In its response, Efficiency Energy repeats an identical conclusory objection to each of Requests 4, 5, 16, 17, and 18, asserting that those Requests seek irrelevant information. Efficiency Energy's objections are baseless; these Requests are relevant. They seek to discover the source of evidence being used by UTS and UHS, the reliability and validity of an Article cited by their expert, and the credibility of Volker as a designated expert. Efficiency Energy should therefore be compelled to respond.

## B.  Requests 4, 5, 16, 17, 18 do not impose an undue burden.

Efficiency Energy objects to all five Requests as creating an "undue burden," stating that they "would require the disclosure of all [*sic*] EE's documents, regarding all of EE's clients, since EE began operations in 2007" and "they are not limited as to time." Ex. B.  Efficiency Energy also states that the five Requests are "vague as to scope."  The Federal Rules specifically direct courts to consider whether the discovery requested is proportional to the needs of the case by considering, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Wallace v. Tesoro Corp.*, No. 11-00099, 2016 U.S. Dist. LEXIS 194195, at *13–14 (W.D. Tex. Sept. 26, 2016) (citing Fed. R. Civ. P. 26(b)(1)).  Efficiency Energy bears the burden of demonstrating that compliance with the EE Subpoena presents an undue burden. *Id.* at *14-15.  To satisfy that burden, Efficiency Energy must provide a specific explanation for why Alliantgroup's discovery requests are unreasonable. *Id.* (citing *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 435 (N.D. Tex. 2016) (citing Fed.R.Civ.P. 26(b)(1)).

Efficiency Energy has failed to satisfy this burden.  It propounded boilerplate copy-and-paste objections that are nonsensical in light of the plain language of Requests 4, 5, 16, 17, and 18, which clearly do not seek information related Efficiency Energy's clients.  In fact, the instructions to the EE Subpoena explicitly directs Efficiency Energy to redact or withhold

confidential client information that is protected "from disclosure in accordance with 26 U.S.C. §§ 6713, 7216." Ex. A at 7, ¶ 27.

The Requests themselves were drafted narrowly to obtain a discrete set of information: Requests 4 and 5 clearly call for communications related to the Article and its authors, Requests 16 and 17 seek FOIA requests and government responses thereto, and Request 18 is asking for communications with media outlets related to § 179D.  These Requests do not expressly state the relevant time period because they bound by information they seek, which is a discrete set of documents, the existence of which should be known or readily ascertainable to Efficiency Energy.

Efficiency Energy cannot dodge these narrowly tailored Requests with evasive and irrelevant objections.  Efficiency Energy should be compelled to respond to Requests 4, 5, 16, 17, and 18.

> ## C. Efficiency Energy is required to produce information in response to Requests 16, 17, and 18 and cannot wholly rely on privilege or trade secret objections, particularly without producing a privilege log and when there is an existing Protective Order.

Efficiency Energy improperly relies on privilege and trade secret objections in response to Requests 16, 17, and 18.  A party that objects based on privilege bears the burden of proof, which cannot be discharged by mere conclusory objections.  *In re Equal Emp't Opportunity Comm'n*, 207 Fed. Appx. 426, 431 (5th Cir. 2006) ("The party resisting discovery by asserting any privilege bears the burden of proof sufficient to substantiate its privilege claim and cannot rely merely on a blanket assertion of privilege.")

Efficiency Energy has again failed to meet its burden and is improperly evading its discovery obligations.  Consistent with the Federal Rules, the instructions to the EE Subpoena provide that, where a claim of privilege is asserted, Efficiency Energy should prepare an

appropriate privilege log in lieu of producing the purportedly privileged documents.  *See* Ex. A at 5, ¶ 24 ("If a claim of privilege is asserted . . . You shall identify the nature of the privilege or objection, including work product protection, that is being claimed . . .").  It is only after reviewing a privilege log that this Court can determine whether any waiver or exception applies to the withheld material.  Efficiency Energy has not produced a privilege log.

Nevertheless, it is difficult to understand how FOIA requests (Request 16), the government responses thereto (Request 17), and communications with the media (Request 18) would contain privileged materials.  To invoke the attorney-client privilege, the proponent must establish a communication between attorney and client in which legal advice was sought or rendered, and which was intended to be and was in fact kept confidential.  *U.S. v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).  Clearly, none of these Requests call for such communications.  In fact, the Requests are not even seeking confidential materials internal to Efficiency Energy, as all of the responsive documents and communications would be with external third-parties—*i.e.*, government agencies and media outlets.

Efficiency Energy has similarly failed to establish that the Requests require disclosure of trade secret information.  None of the requests expressly seek categories of information that could be considered a "trade secret," which generally include business decisions, research, policies, strategies, or any other internal proprietary materials.  Efficiency Energy's conclusory objections, without more, are insufficient to justify its failure to produce in response to the EE Subpoena.  *See Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985).

Even if Efficiency Energy made the requisite showing, there is no absolute privilege for trade secrets or similar confidential information.  *Speed Trac Tech., Inc. v. Estes Express Lines, Inc.*, 2008 WL 2309011, at *4 (D. Kan. Jun. 3, 2008).  Rather, this Court may instead order

disclosure of trade secret information provided it takes measures to protect the interests of the person asserting the privilege. *See* Fed. R. Civ. P. 45(d)(3)(C).

Here, adequate measures are already in place to protect any disclosed trade secret information. The Protective Order entered by Judge Hittner in the S.D. Texas Action covers any confidential information that Efficiency Energy may provide in response to the Subpoena. In fact, the Protective Order specifically applies to non-party disclosure. Ex. P at ¶ 1 ("[The Protective Order] governs any document, information or other thing furnished by any party to any other party, *and it includes any nonparty who receives a subpoena in connection with this action*." (emphasis added)). Pursuant to the terms of the Protective Order, any material designated as "Confidential Information" or "Confidential Attorney Eyes Only Information" will be afforded protection. *Id.* at ¶¶ 2–3. The existence and terms of the Protective Order are sufficient to address Efficiency Energy's objections. Efficiency Energy should therefore be ordered to produce documents responsive to Requests 16, 17, and 18.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED Alliantgroup, L.P. respectfully requests that the Court grant its Motion to Compel and order Efficiency Energy to produce documents and communication responsive to Requests 4, 5, 16, 17, and 18 of the EE Subpoena.

RESPECTFULLY SUBMITTED this 2nd day of July, 2018.

JASON SCOTT VARNADO
Attorney-in-Charge
Texas State Bar No.:  24034722
WILLIAM R. TAYLOR
Texas State Bar No: 24070727
JONES DAY, 717 Texas, Suite 3300
Houston, TX 77002
(T) (832) 239-3694
(F) (832) 239-3600
jvarnado@jonesday.com
wrtaylor@jonesday.com

## CERTIFICATE OF CONFERENCE

On June 25, 2018, I, along with Kathryn Keneally, counsel to Alliantgroup in the S.D. Texas Action, conferred with Efficiency Energy's counsel, Michael McCue, regarding the aforementioned basis for these Motions.  He opposed.

/s/
WILLIAM R. TAYLOR

## CERTIFICATE OF SERVICE

This is to certify that on July 2, 2018, a true and correct copy of the foregoing was served on counsel for Efficiency Energy, Michael McCue, by USPS and e-mail and was also served by personal delivery on Efficiency Energy's registered agent as follows:

| | |
|---|---|
| Michael E. McCue<br>mmccue@meadowscollier.com<br>Meadows, Collier, Reed, Cousins,<br>Crouch & Ungerman, L.L.P.<br>901 Main Street, Suite 3700<br>Dallas, Texas 75202 | Corporation Service Co. d/b/a CSC-Lawyers Inc, 211 E. 7th Street, Suite 620, Austin, Texas 78701 |

/s/ *William Taylor*

WILLIAM R. TAYLOR