```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF TEXAS

 3                        HOUSTON DIVISION

 4   THE UNIVERSITY OF TEXAS      §    CASE NO. 4:18-MC-02271
     SYSTEM, ET AL                §    HOUSTON, TEXAS
 5                                §
     VERSUS                       §    TUESDAY,
 6                                §    OCTOBER 2, 2018
     ALLIANTGROUP, LP, ET AL      §    2:01 P.M. TO 2:30 P.M.
 7

 8                      STATUS CONFERENCE

 9            BEFORE THE HONORABLE PETER BRAY
                UNITED STATES MAGISTRATE JUDGE
10

11

12
         APPEARANCES:              SEE NEXT PAGE
13
         COURT RECORDER:           JENNIFER OLSON
14
         COURT CLERK:              JASON MARCHAND
15

16

17

18

19

20             TRANSCRIPTION SERVICE BY:

21        JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                935 ELDRIDGE ROAD, #144
22              SUGAR LAND, TEXAS 77478
           Tel: 281-277-5325 ▼ Fax: 281-277-0946
23              www.judicialtranscribers.com

24
       Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.



                JUDICIAL TRANSCRIBERS OF TEXAS, LLC
```

```
 1                    TELEPHONIC APPEARANCES:

 2


 3   FOR UNIVERSITY OF TEXAS,
     ET AL:                        MEADOWS COLLIER
 4                                 Michael E. McCue
                                   901 Main Street
 5                                 Suite 3700
                                   Dallas, TX   75202
 6                                 214-744-3700

 7
     FOR ALLIANTGROUP, ET AL:      JONES DAY
 8                                 William R. Taylor, Esq.
                                   717 Texas Avenue
 9                                 Suite 3300
                                   Houston, TX   77002
10                                 832-239-3939

11                                 JONES DAY
                                   Kathryn Keneally, Esq.
12                                 Michael Scarduzio, Esq.
                                   250 Vesey Street
13                                 New York, NY   10281
                                   212-326-3402
14                                 212-326-3638

15
     FOR WHRA MERGER SUB II:       PORTER HEDGES, LLP
16                                 Katelin E. Cox, Esq.
                                   1000 Main Street
17                                 Floor 36
                                   Houston, TX   77002
18

19

20

21

22

23

24

25
```

JUDICIAL TRANSCRIBERS OF TEXAS, LLC

1          HOUSTON, TEXAS; TUESDAY, OCTOBER 2, 2018; 2:01 P.M.
2                COURT CLERK:  All rise.
3                THE COURT:  Hello, be seated.
4                There's just one of you here in the courtroom.  So
5   let's see, for UTU of H we have Michael McCue on the phone,
6   right?
7                MR. MCCUE:  That's correct.
8                THE COURT:  All right, I can hear you, great.
9                Then we have Mr. Taylor here for AlliantGroup and
10  Ms. Keneally -- am I saying that name right?
11               MS. KENEALLY:  Yes, Your Honor.
12               THE COURT:  And both of you are for AlliantGroup.
13               And then Katelin Cox for WHR, correct?
14               MS. COX:  Yes, Your Honor.
15               THE COURT:  Is that everybody?
16               MR. TAYLOR:  Your Honor, John Simpson with
17  AlliantGroup is also here.
18               THE COURT:  Greetings.
19               MR. SCARDUZIO:  And Michael Scarduzio for
20  AlliantGroup, also.
21               THE COURT:  Oh, I'm sorry, who?
22               MR. SCARDUZIO:  Michael Scarduzio.
23               THE COURT:  All right.  So, I kind of thought we'd
24  be able to work this out last time based on some of the
25  foreshadowing that I gave you.  But bottom line -- let's

1  just go through these.  All we're talking about now are
2  document request number 16, 17, and 18, correct?
3          MR. MCCUE:  Correct, Your Honor.
4          THE COURT:  All right, just make sure you identify
5  yourself whoever is speaking.
6          MR. MCCUE:  I'm sorry, that was Mike McCue.
7          THE COURT:  All right.  So.
8          MS. KENEALLY:  Kathy Keneally.  I agree that we're
9  down to 16, 17 and 18, although we do have a request that we
10 get the documents promptly.  We haven't seen them yet.
11         THE COURT:  All right, let's deal with the 16, 17,
12 and 18 first, okay.
13         Document Request Number 16 seeks -- where is it
14 here? -- copies of all requests made by Efficiency, right,
15 is the -- is that what we're referring to that party as,
16 Efficiency Energy?  Is that what it is?  Somebody help me.
17         Fine.  Made by you to state or local or state or
18 federal agencies officials, institutions, or governments or
19 employees thereof under the FOIA.
20         Does anybody not agree with me that that's pretty
21 broad?
22         MR. MCCUE:  This is Mike McCue.  Obviously we
23 agree, Your Honor.  There's no specific federal agency
24 through states or state agency identified.  There's no
25 specific document.  There's no time frame.  Efficiency

1 Energy has been in business for over a decade.
2     THE COURT: All right, so I got it. I'm on your
3 side and I'm not trying to cut you off. But is it not also
4 the case that we could -- that there is a subset of those
5 documents that are relevant?
6     (No audible response.)
7     THE COURT: Anybody?
8     MS. KENEALLY: That would be our position, Your
9 Honor. And Plaintiff's counsel -- this is Kathy Keneally
10 for AlliantGroup. Plaintiff's counsel had not suggested
11 ways to narrow this.
12     I'm very much open to narrowing it to subject
13 matter and dates.
14     THE COURT: Okay, so I -- and by the way, 16 and
15 17 are really pretty darn close to being the same thing,
16 right?
17     MS. KENEALLY: Yes, Your Honor. One is Federal,
18 one is State. This is Kathy Keneally.
19     THE COURT: Well, they both say State and Federal.
20     MS. KENEALLY: Oh, I'm sorry.
21     MR. MCCUE: Your Honor, this is Mike McCue.
22 Sixteen asks for the requests in sales and 17 asks for all
23 the documents that he has gotten over the last decade.
24     THE COURT: All right, so I am not -- I'm going
25 to -- this -- here's where I'm at and somebody tell me if

1  I'm missing something.  I think that the requests
2  themselves, that should not be burdensome at all to the
3  extent that we narrow it.  And then somebody needs to tell
4  me a little bit about what documents were ever received.
5         Why can we not narrow this to FOIA requests and
6  documents received pertaining to this case?  In other words,
7  I don't see why we need to get into every FOIA request that
8  Efficiency Energy ever made ever to every state and local or
9  federal agency.
10         But at the same time, it seems to me that there's
11  some relevant documents in there, right?
12         MS. KENEALLY:  Your Honor, this is Kathy Keneally.
13  I think rather than get into a debate about what this case
14  might be, I think we could limit this to documents -- FOIA
15  requests in response to state and federal relating to
16  AlliantGroup.  I mean, in to the extent AlliantGroup is
17  mentioned in the request.
18         THE COURT:  So what would be the objection to that
19  from Efficiency Energy's standpoint?
20         MR. MCCUE:  Well, Your Honor, we can certainly
21  provide UT and UH, that's manageable.  But with respect to
22  documents AlliantGroup is nationwide.  There could be
23  documents regarding AlliantGroup with respect to hundreds of
24  these Open Records Act requests.
25         I don't think Counsel for Alliant has demonstrated

1  why any of this information -- unless it relates to UT or UH
2  is relevant.
3              THE COURT: Response.
4              MS. KENEALLY: Your Honor, Mr. Volker of
5  Efficiency Energy has been designated as an expert witness
6  in this case. He is collecting information and we know that
7  he is. He is collecting information about AlliantGroup
8  through FOIA requests and one of the things that he's an
9  expert on how AlliantGroup engages in its processes and what
10 it does in connection with Section 179D.
11             He's gathering this information. He's designated
12 an expert witness. And we know that he is at least
13 selectively providing this information to the Plaintiffs
14 because we've seen these documents in a deposition.
15             MR. MCCUE: This is Mike McCue, Your Honor. To
16 the extent any documents that's been used and I'm not sure
17 which documents. Counsel mentioned two documents when we
18 had out meet and confer last week.
19             But those -- if I'm correct on the documents she's
20 talking about -- those were communications from AlliantGroup
21 or to AlliantGroup. So they've got all those documents
22 anyway.
23             The other problem is a lot of these FOIA requests
24 are used as part of -- as I mentioned the last time we were
25 there, Efficiency Energy's business is 100 percent 179D.

1  And part of these documents that we're talking about are
2  going to be buildings around the country where there's been
3  a 179D allocation or where there haven't been a 179D
4  allocation. And that's Efficiency Energy's work product
5  and --
6         THE COURT: No, I got you. What I'm trying to
7  figure out is, is it really the case that there's this huge
8  a volume of documents received from governmental agencies
9  pertaining to AlliantGroup?
10         MR. MCCUE: I don't know, and I don't know if -- I
11 don't think there's any way Efficiency Energy would know
12 unless they go through gigabytes of documents. As
13 Mr. Volker stated in affidavit, he estimates that he's -- in
14 the last decade has submitted 200 of these things.
15         THE COURT: But so couldn't he look through those
16 200 and see how many of them were directed to obtaining
17 documents pertaining to AlliantGroup? That doesn't seem --
18 that doesn't seem to be burdensome at all. That seems like
19 something that could take about an hour.
20         MR. MCCUE: You know, I didn't ask him
21 specifically about that. I'm certain that a lot of
22 documents that are obtained. Since AlliantGroup is the
23 biggest 179D certifier in the country, a lot of documents
24 that he obtained involved AlliantGroup.
25         THE COURT: And when you say -- okay, so imagine

1   this.  Imagine that you find out that, you know, 20 of those
2   200 requests were directed to government agencies requesting
3   documents pertaining to AlliantGroup, why not make those
4   responses available to AlliantGroup?  I mean, they're not
5   privileged.
6           MR. MCCUE:  No, they're not privileged, Your
7   Honor, but their also not relevant.  If they regard
8   AlliantGroup, again AlliantGroup's got copies of them if
9   they involve AlliantGroup.
10          THE COURT:  No, but I think it's sort of a little
11  bit of a rule of optional completeness issue.  If you're
12  obtaining, you know, a set of documents and then using a
13  subset of them in a deposition saying that well, you
14  probably already have this document.  That's different than
15  AlliantGroup being able to say yeah, but wait a minute.
16  There's these other documents that were in the same subset
17  or the same set that you're not using and they should be
18  able to make use of those, don't you think?
19          MR. MCCUE:  Well, if they have documents in mind
20  that they contend that we used, it seems to me the relevant
21  production would be the documents we got from the one or two
22  entities that were involved in those documents.
23          THE COURT:  So here's the thing.  Now we're having
24  this hearing and I guess I asked a question a minute ago and
25  now it's occurring to me that this is real problematic that

1  we don't have the answer.
2           You don't know then how many document requests --
3  how many FOIA-type requests relate to AlliantGroup?
4           MR. MCCUE:  No.
5           THE COURT:  Then how can you be saying it's
6  burdensome?  Because I think that what you need to do is
7  produce the documents that were produced to Efficiency
8  Energy Group in response to FOIA or other governmental
9  disclosure requests -- whatever the state version is --
10 where the request was for AlliantGroup-related documents.
11          I'm sorry, that was a very long run on sentence
12 and I can repeat it and I apologize.  But as to the requests
13 where Efficiency Energy was seeking AlliantGroup-related
14 documents, those should be produced.  They're not
15 privileged.  They're in the hands of a governmental entity.
16 There's, you know, I presume they're already in electronic
17 form and they can just be put onto a disk or a drive
18 en mass.  Right?
19          MS. KENEALLY:  That's acceptable to AlliantGroup.
20          THE COURT:  Well I guess, I mean, I'm not trying
21 to negotiate.  I'm just trying -- sir, Mr. McCue, how am I
22 wrong?  I mean, I don't want to do something that is not
23 informed, but that's where I'm at, unless you can persuade
24 me.
25          MR. MCCUE:  And I guess it's my responsibility for

1 not knowing the answer to the Court's question, but I still
2 have a concern about what the volume could be and how that's
3 relevant.
4 　　　　　I don't think it's relevant to show biased or that
5 Alliant or Efficient Energy has an incentive for
6 governmental entities to be able to share in the -- to share
7 in the deduction.  He testified in his deposition to that.
8 　　　　　THE COURT:  Well, I disagree.  I mean, I think --
9 I think that -- and again, you're going to have a trial
10 where the very specific documents that are offered as
11 exhibits will either be admitted or not admitted.  And
12 various theories of each side's case will be permitted or
13 not permitted to be gotten into.
14 　　　　　But we're at the discovery phase and I think that
15 what AlliantGroup is saying is that Mr. Volker, through
16 Efficiency Energy, is a, an expert and b, is -- and I know
17 that this isn't directly a topic that we're talking about
18 but it's part of the papers that I've been privy to -- is
19 that he's sort of trying to move an agenda with respect to
20 the 179D deduction, you know, and we're going to get into
21 talking to reporters in a minute.
22 　　　　　He's trying to get the law to be crafted in a
23 direction that helps him.  And part of what he's doing is
24 obtaining documents from governmental agencies and then
25 those documents are being used in depositions.

1          And so I think that their relevance is not an
2   issue to me.  And so I think the only way that I can come
3   down on this -- because you know, I don't know what the date
4   was of that hearing that we had.
5          Does somebody remember that?
6          MR. MCCUE:  It was about a month ago, Your Honor.
7          THE COURT:  Easily a month ago.  And so, you know,
8   we set this status conference for this very day and time at
9   that time.  Nothing's changed and we knew what the issues.
10  We knew the rulings that I made the last time, which were:
11  Let's get the documents produced that are relevant to this
12  case, relevant to AlliantGroup, relevant to the claims and
13  defenses.
14         And I'm doing exactly consistent thing right now
15  which is this.  Here's how the docket entry is going to
16  read, the Minute Entry Order:
17     "Efficiency Energy is ordered to review it's FOIA
18      requests and as to those where the subject matter was
19      AlliantGroup, produce the documents produced by the
20      governmental entity."
21         So next is the communications with the press,
22  right?  Isn't that what 18 is?
23     "All documents of communications between or among you
24      and any media, news or blog company or agency or
25      employee owner affiliate thereof regarding

1     Section 179D."

2     So here's my first question: Is -- forget for a second, you know, admissibility and this notion that well, newspaper articles aren't admissible; therefore, the discussions with reporters and such can't be admissible because that's just not true.

7     A statement by a party can come in if -- I mean it just can come in and the newspaper article doesn't have to be admissible for the statement to a reporter to come in if there's an email from Mr. Volker to <u>The New York Times</u> that says I'm trying to -- and I'm being kind of factious here, but I'm trying to push an agenda and I'd really like your article to come out in a way that's favorable to me.

14     I mean that could be something that would be highly relevant at a trial. And to at least discoverable at this stage, so.

17     Go ahead, sir.

18     MR. MCCUE: This is Mike McCue, again, Your Honor. We offered to produce any communications with media, blogs, et cetera, having to do with UTUH or the litigation, which I think was consistent with what the Court ordered at the last hearing, but that was rejected.

23     THE COURT: Well what's the problem with that? I think I can predict it, but what's the problem with that?

25     MS. KENEALLY: Again, Your Honor, this is Kathy

1 Keneally. I think you can predict it with all respect and I
2 don't think we're talking about a lot of articles here. I
3 think all the parties know what's been written on this.
4 It's not the hottest topic in the press. But he said that
5 Mr. Volker is out there as an expert in this case
6 influencing what the thought process is on this issue
7 through his communications with media.
8     We want to see those documents regardless of
9 whether it specifically relates to this lawsuit or not.
10     THE COURT: So Mr. McCue, what is the volume in
11 extent of documents that we're talking about?
12     MR. MCCUE: He has communicated with -- excuse me,
13 Your Honor, I'm trying to find it. I think roughly seven to
14 nine news organizations that he can recall communicating
15 with.
16     THE COURT: And this is all by email?
17     MR. MCCUE: I believe so, yes.
18     THE COURT: So this is just sorting the in and out
19 box by name problem, right? I mean this is not a burdensome
20 issue. This is not an expense issue. This is -- I mean if
21 I were to go through my -- I've had the same email for, you
22 know, 12 years or something and I can, you know, go ahead
23 and dig out all the communications that I had with my son's
24 high school teacher, you know, years ago just by searching
25 that name and sorting it and then I could just save those

1 emails, right?

2     MR. MCCUE:  Yes, I assume that he can find those
3 emails, Your Honor.

4     THE COURT:  So your only objection is this
5 relevance objection?

6     MR. MCCUE:  Well, in -- yeah, and that is part of
7 the analysis under the proportionality test and Ms. Keneally
8 said it -- we want to see, you know, what -- how he's
9 shaping the views of the media.  I just don't see how that's
10 at all relevant to the allocations in this case.

11     You know, at some point, yeah, they would like
12 everything my client, I guess, has ever done.  But I don't
13 think that's appropriate.

14     THE COURT:  Well, you know that I -- I mean, we've
15 already just in this hearing and the last hearing -- just to
16 be clear -- have limited to a large extent the document --
17 the set of documents that I'm allowing them to get into.

18     I mean, I think you know that.  So, let's not go
19 to the place where it's, oh, well they're just getting
20 everything.  I mean, we're limiting these things to the
21 matters that are relevant in this case.

22     For example, in the FOIA request, you know, if you
23 did a FOIA request relating to some other company and some
24 other project and some other whatever that has nothing to do
25 with AlliantGroup, they're not getting it.  We've already

1 covered that.

2 So, here we're talking about email strings with
3 seven to ten reporters in a case -- I mean, what are the --
4 and I really don't know -- how much money is this case
5 worth? Does somebody have just a ballpark? Like what kind
6 of demands are being made here?

7 MR. MCCUE: $3 million, Your Honor.

8 THE COURT: All right, so in a $3 million case, I
9 think doing a search for seven to ten email strings or maybe
10 there's many email strings but with seven to ten
11 recipients/senders, is not at all out of proportion to the
12 needs of this case.

13 And I find that they're relevant. They're not
14 privileged. If we're asking the reporter for these things,
15 that would be different, but we're not. We're asking your
16 client who's a litigant -- well not a litigant, but an
17 expert for one of the litigants -- to produce documents that
18 may very well show bias.

19 They may very well not show bias. They might be
20 great for you. But we don't know that and that's part of
21 why we're doing discovery.

22 So I'm going to order that those be produced.
23 There's no other claim of privilege or confidentiality is
24 there that I'm missing?

25 MR. MCCUE: No, Your Honor.

1          THE COURT: Okay. Well then that's what we'll
2  order and is there -- I think we started out with something
3  that says we're not happy with the resolution that you-all
4  reached on what is it on four and five?
5          MS. KENEALLY: No, no, no, Your Honor. This is
6  Kathy Keneally for AlliantGroup. My only comment with four
7  and five is that we came to an agreement but we haven't seen
8  the documents yet, so. That's -- rather than find myself
9  coming back to the Court saying we ask them to do what they
10 said they would do, I thought I would just mention, hey,
11 we'd like to get the documents.
12         THE COURT: All right, so Mr. McCue you know let's
13 do right now what you-all could just do on the phone. When
14 do you expect that you should be able to turn over those
15 documents?
16         MR. MCCUE: I talked with him last week, Your
17 Honor, and he had already begun to pull all of that
18 together. We can certainly -- they've got his deposition on
19 Friday. You know, I haven't talked to him this week, but I
20 would think we could certainly get them those documents
21 before Friday.
22         THE COURT: So they'll need those documents to
23 prepare for the deposition, right?
24         MR. MCCUE: Yes.
25         THE COURT: And so today is Tuesday. I mean,

1  what's the volume of documents that we're talking -- and I
2  didn't study those, too, because everybody said that they
3  were taken care of.  So, what are -- these are materials
4  relating to an article published by the former professor.
5          MR. MCCUE:  Yeah, I don't think they're that
6  great, Your Honor.  It's emails -- some emails and
7  attachments.
8          THE COURT:  Oh, okay.
9          MR. MCCUE:  I will do my -- as soon as we hang up,
10 I'll call Mr. Volker.  But I'll represent that I'll do my
11 best to get it to them by tomorrow.
12         THE COURT:  Okay, by, you know, 5:00 o'clock
13 tomorrow, not midnight.  Give them at least a chance to
14 digest them on Thursday so -- you know, because the last
15 thing that anybody wants is to have to have some sort of
16 emergency motion to delay the deposition because we didn't
17 have a chance to review the documents and all that.
18         So is that -- I'm just going to put in the Order
19 that the documents responsive to Document Requests 4 and 5
20 will be produced by 5:00 o'clock and then whatever date
21 tomorrow is.  That way your client knows it's ordered and
22 it's the Judge being this way and not you.  Sometimes that
23 helps.
24         Were there any other matters that I can attend to?
25         MS. KENEALLY:  Your Honor, this is Kathy Keneally

1  again.  On the -- on your Order concerning the request
2  regarding the FOIA and related similar government requests,
3  we're requesting the request as well as the responses.
4          THE COURT:  And I'm granting -- right, yes.
5  Granted.
6          MS. KENEALLY:  Right, I just wanted to make sure
7  your instruction was encompassing that.  I wasn't clear on
8  what I heard.
9          THE COURT:  Right.  And so, yes, both of those are
10 granted in part and denied in part.  And I will do my best
11 to, you know, make it clear in the Minute Entry Order what
12 we're talking about.  But I think we all understand if
13 Efficiency Energy asked for something related to
14 AlliantGroup and they got it, they got a response, turn it
15 over.  And if the response was, no, we have no documents --
16 which in my FOIA experience is usually the response --
17 produce that.
18          Or if the response to the FOIA request was some
19 sort of, you know, governmental objection or we're not doing
20 it, produce that.  Just whatever the response was, fair
21 enough?
22          MR. MCCUE:  This is Mike McCue, Your Honor.  I
23 understand what the Court's ordering.
24          THE COURT:  All right, very well.  Okay if there's
25 nothing else, you-all are excused.  Thanks.

1      MR. MCCUE:  Thank you, Judge.

2      MR. SCARDUZIO:  Thank you, Your Honor.

3      THE COURT:  All right.

4      COURT CLERK:  All rise.

5   (Proceeding adjourned at 2:30 p.m.)

6                  * * * * *

7      *I certify that the foregoing is a correct

8  transcript to the best of my ability produced from the

9  electronic sound recording of the proceedings in the above-

10 entitled matter.*

11 */S/ MARY D. HENRY*

12 *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

13 *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

14 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

15 *JTT TRANSCRIPT #59354*

16 *DATE FILED:  OCTOBER 23, 2018*

17

18

19

20

21

22

23

24

25